UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSEPH STEWART,

    Plaintiff,

    v.

CAPTAIN SCHOTIMER, et al.,

    Defendants.

CAUSE NO.: 3:18-CV-518-JD-MGG

OPINION AND ORDER

Joseph Stewart, a prisoner without a lawyer, was assaulted by another inmate while housed at the Miami Correctional Facility. He has filed an amended complaint naming eighteen defendants and alleging that they failed to protect him and denied him adequate medical care following the attack. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . .." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, this court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief.

On May 13, 2017, Stewart was moved into a cell shared with offender Jawaun Woods. Stewart quickly learned that Woods had a reputation as a mentally ill and violent homosexual with a history of assaulting his cellmates, both physically and sexually. In response to this information, Stewart asked Case Worker Bailey, who knew

of Woods' history of assaulting other inmates, to move him immediately. She determined that, due to Stewart's classification, he should not have been housed in that unit. Stewart also learned that the intercom in his new cell was broken, and he told Case Worker Bailey that he was afraid to be housed with Woods without even having an intercom to contact officers if Woods attacked him. She indicated that he should be patient. She further indicated that she would message classification, let the administration know about his situation, and have him moved as soon as she could. Stewart repeatedly reminded Case Worker Bailey of his need to be moved, but she acted as if she was too busy to deal with his situation.

On May 23, 2017, ten days after Stewart began sharing a cell with Woods, Woods attacked Stewart. Woods threatened Stewart with a knife, and Stewart believed that Woods would kill him if he called for help. An officer delivered food just after the attack, but Woods had already warned Stewart that he would kill him if Stewart called out while the food sacks were being delivered. When the sack was delivered, Woods blocked the window such that the officer could not see Stewart. Because of his fear, Stewart did not yell for help. At 7:00 p.m., the cell doors opened, and the guards were alerted to what happened. As a result of the attack, Stewart suffered a concussion and his eyes, lips and face were swollen. Woods was taken to lockup, and Stewart was placed in a holding cell in the Restricted Housing Unit.

Stewart alleges that Case Worker Bailey should have protected him from this attack. When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the

2

attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). General requests for help and expressions of fear are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). "Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005). Here, it can plausibly be inferred that, based on Case Worker Bailey's knowledge of Wood's history of attacking other cellmates, Case Worker Bailey knew that an attack was inevitable if Stewart and Woods were not separated. Giving Stewart the inferences to which he is entitled, he has stated a claim against Case Worker Bailey for failure to protect him from Woods, resulting in Stewart's attack on May 23, 2017.

Stewart also alleges that Superintendent Kathy L. Griffin, Assistant Superintendent Sharon Hawk, Captain Ertel, Captain Shotimer, Sgt. Hieshman and Officer Wilson all knew (either from Case Worker Bailey or directly from Stewart) that Stewart was housed with Woods, that Woods had a history of attacking his cellmates, that the intercom in Stewart's cell was not working, and that Stewart was afraid of

3

Woods, but none of them took any action to protect Stewart. But, "'no prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017)(quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

As the Seventh Circuit explained in *Burks*:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Likewise, Stewart cannot hold everyone that knew he feared his cellmate because of his reputation liable for deliberate indifference to his safety. Stewart alleges that he asked Case Worker Bailey to move him and Case Worker Bailey failed to move him before he was attacked by Woods. Superintendent Kathy L. Griffin, Assistant Superintendent Sharon Hawk, Captain Ertel, Captain Shotimer, Sgt. Hieshman and Officer Wilson are akin to the recipients of a letter writing campaign and will therefore be dismissed.

Additionally, Stewart claims that Lieutenant Stalhood and Mr. Stoll were indifferent to his safety because they knew the intercom was broken and did not relocate Stewart until a repair could be made. Stewart does not allege that Lieutenant

4

Stalhood or Mr. Stoll knew anything about Woods' history of assaulting inmates or Stewart's safety concerns – he alleges only that they knew that the intercom was not working. Merely failing to remove Stewart from a cell with a broken intercom or failing to fix the broken intercom with haste does not demonstrate deliberate indifference to Stewart's safety. This does not state a claim.

Next, Stewart alleges that Sgt. Crossor and Sgt. Porter were deliberately indifferent to his safety by failing to perform their routine rounds properly every thirty minutes to ensure Stewart was safe when they knew that the emergency intercom in Stewart's cell was not working. Stewart asserts that the guard that delivered the sack should not have allowed Woods to block the cell window. Stewart does not indicate which guard delivered the sack, but it does not matter. A violation of the prison's own policy does not equal a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.") Stewart does not allege facts from which is can be plausibly inferred that either Sgt. Crossore or Sgt. Porter were deliberately indifferent to Stewart's safety. Therefore, the claims against Sgt. Crossore and Sgt. Porter will be dismissed.

Stewart suffered significant trauma to his face and head during the attack. Once Stewart was in the holding cell in the Restricted Housing Unit, he received a cursory medical assessment by an unnamed nurse. The nurse checked his blood pressure and his temperature but did not provide him with any care for his wounds. The next day, he told both Officer Banks and Officer J. Michael that he believed he had a concussion. He

5

was vomiting and could barely see. He told Officer Banks that he was having severe headaches and that his head hurt so bad he felt dizzy. He asked both Officer A. Banks and Officer J. Michael for a medical request form and a writing utensil, but they refused to get him the materials he needed and refused to take any other action to see that he received medical treatment. Four days later, Stewart obtained a medical form and pencil from another offender. He was not sent to the infirmary until two and a half weeks after the attack. The Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). Stewart has alleged that Officer Banks and Officer J. Michael could see that he was severely injured, were told that he was in great pain, and refused to summon medical help. Giving Stewart the benefit of the inferences to which he is entitled at this stage of the proceedings, this states a plausible claim of deliberate indifference.

He also alleges that Officer A. Banks, Officer J. Michael, Sgt. Hieshman, Sgt. Porter, Sgt. Crossore should be liable to him for placing him in a disciplinary unit for two and a half weeks when he did not commit a disciplinary offense. Generally, prison administrators are afforded wide-ranging deference in managing prisons and deciding where to house inmates. *See Whitley v. Albers*, 475 U.S. 312, 321–22 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Here, Stewart was housed in the Restrictive Housing Unit for only two-and-a-half weeks. This does not state a claim.

Stewart also alleges that, when he did receive medical care beyond a cursory assessment by an unnamed nurse, it was inadequate. First, Stewart alleges that Dr. Marandet and Dr. Kuenzli both failed to answer multiple medical requests to be evaluated for a concussion, and that Dr. Marandet, Dr. Kuenzli, Kym Myers, Debbie Templin, and Loretta Dawson all made conscious decisions to not see him despite his requests. He further alleges that none of these individuals would send him to see a specialist, even though he needed specialized care to find out the extent of the damage from the attack and address his chronic pain. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering.

*Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Stewart does not indicate when he made his multiple health care requests or how he submitted them. He does not indicate how he knew that any of these individuals were actually aware of his multiple requests.[1] The only health care request form that Stewart provided is one dated August 20, 2018, well after this lawsuit was initiated and just days before the amended complaint was filed. In that request, Stewart indicates that he is still suffering from headaches and, despite multiple requests, Kim Myers has not sent him to see a specialist for evaluation. The response to the requests indicates that Dr. Kuentzi is aware that Stewart has headaches and that he can follow up with the doctor at his next chronic care appointment. The response also indicates that there are no orders to see another provider for care. But, prisoners are "not entitled to demand specific care" and they are "not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Nothing in either Stewart's complaint or the health care request suggests that any of the medical providers have been deliberately indifferent to Stewart's injuries. Therefore, for now, he has not stated a claim based on the denial of medical care.

For these reasons, the court:

(1) GRANTS Joseph Stewart leave to proceed against Case Worker Bailey in her individual capacity for compensatory and punitive damages on his claim that she was

---

[1] If Stewart believes he can provide additional facts in support of his claims against Dr. Marandet, Dr. Kuenzli, Kym Myers, Debbie Templin, and Loretta Dawson, he may file a motion requesting leave to amend his complaint together with a copy of his proposed amended complaint, and the court will re-evaluate this ruling.

deliberately indifferent to Stewart's safety, resulting in Stewart being attacked by Jawaun Woods on May 23, 2017, in violation of the Eighth Amendment;

(2) GRANTS Joseph Stewart leave to proceed against Officer A. Banks and Officer J. Michael in their individual capacities for compensatory and punitive damages on his claim that they were deliberately indifferent to Stewart's medical needs when they refused him access to medical care for a two-and-a-half-week period of time following the May 23, 2017, attack, in violation of the Eighth Amendment.;

(3) DISMISSES all other claims pursuant to 28 U.S.C. § 1915A;

(4) DISMISSES Superintendent Kathy L. Griffin, Assistant Superintendent Sharon Hawk, Captain Ertel, Captain Shotimer, Sgt. Heishman, Officer Wilson, Lieutenant Stalhood, Mr. Stoll, Sgt. Crossore, Sgt. Porter, Dr. Marandet, Dr. Kuenzli, Kym Myers, Loretta Dawson, and Debbie Templin;

(5) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Case Worker Bailey, Officer A. Banks and Officer J. Michael at the Indiana Department of Correction with a copy of this order and the complaint (ECF 8) as required by 28 U.S.C. § 1915(d); and

(6) ORDERS, pursuant to 42 U.S.C. §1997e(g)(2), that Case Worker Bailey, Officer A. Banks and Officer J. Michael respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 6, 2018

                                                                /s/ JON E. DEGUILIO  
                                                                 JUDGE  
                                                                 UNITED STATES DISTRICT COURT